**R. BANKS, et al., Petitioners-Appellants,**

v.

**PAN AMERICAN WORLD AIRWAYS, INC., and Elizabeth Hartford Dole, Secretary of Transportation, Respondents-Appellees.**

No. 84–5117.

United States Court of Appeals, Eleventh Circuit.

June 25, 1985.

Robert H. Wiggins, Miami Shores, Fla., R. Michael Pipkin, Chapel Hill, N.C., for petitioners.

Lloyd B. Egenes, O'Gara, Friedman, Egenes & Burke, San Francisco, Cal., Thomas L. Ray, Office of the Asst. Gen. Counsel for Litigation, Dept. of Transp., George Edelstein, John J. Powers, III, Dept. of Justice, Washington, D.C., Robert D. Young, Dept. of Transp., Arlington, Va., for respondents.

Ernest L. Garb, Richard Schoolman, New York City, for Pan American.

Before FAY and ANDERSON, Circuit Judges, and GIBSON\*, Senior Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge:

Petitioners are a group of flight engineers furloughed by respondent Pan American World Airways, Inc. ("Pan Am") in 1976 as the result of a Route Transfer and Suspension Agreement ("Agreement") between Pan Am and Trans World Airlines, Inc. ("TWA"). They contend that the Civil Aeronautics Board ("CAB" or "Board")[1] erred in refusing to grant prejudgment interest on the dismissal allowances awarded them under the Labor Protective Provisions ("LPPs"), imposed by the Board as a condition of its approval of the Agreement. Because we conclude that the denial of prejudgment interest was neither arbitrary nor capricious, we affirm the order of the Board.

## I. Background.

To alleviate severe financial problems in 1975, Pan Am and TWA entered the Agreement, which called for each carrier to suspend operations on certain major worldwide routes, thereby leaving the other as the only United States carrier on those routes. Because the Federal Aviation Act, 49 U.S.C. § 1378(b), at that time required prior CAB approval of any suspension of service by U.S. carriers, the Agreement was submitted to the CAB for approval and exemption under the anti-trust laws. After granting its approval, the Board issued supplemental Order 75–4–4 (April 1, 1975), imposing LPPs on Pan Am and TWA.[2] In imposing the LPPs, the Board stated that the provisions were necessary to promote the stability and efficiency of the air transportation system. Order 75–4–4 at 7.

Under Section 4(a) of the LPPs, an employee is entitled to a dismissal allowance if he loses his job as a result of the Agreement. In 1976 and 1977 Pan Am furloughed 418 of its flight engineers, most of whom claimed dismissal allowances under the LPPs. Pan Am denied the claims but agreed to arbitrate the matter. The arbitration hearing, originally scheduled for July 1976, was postponed for 19 months pending the Board's decision on another route exchange agreement involving Pan Am. After the hearings the arbitrator ruled in 1979 that 171 flight engineers lost their jobs because of the route swap. In 1981 the arbitrator determined which of the original claimants were entitled to the allowances; that is, which claimants were furloughed because of the route exchange.

The claimants then asserted that they were entitled to interest on their dismissal allowances from the date they became eligible for those benefits. In response, the Arbitrator stated in his Scope Opinion of March 24, 1982 that because Section 4 of the LPPs did not authorize an award of interest, he was without jurisdiction to consider the issue. A number of successful claimants, the "Rankin group," submitted the interest issue to the Board for its consideration. The Board denied the interest claim in Order 83–8–51 (August 10, 1983), citing as its reasons the lack of authority within the terms of the LPPs or the case law for an award of prejudgment interest; the unliquidated nature of the claims; the inapplicability of NLRB decisions awarding interest; and the length of time the claimants waited before asserting a right to interest, thereby depriving Pan Am of notice that its obligations might be increased by millions of dollars. Upon petition by the Rankin group, the Board denied reconsider-

---

\* Honorable Floyd R. Gibson, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

**1.** The Civil Aeronautics Board ceased to exist on December 31, 1984. The Department of Transportation has assumed the duties of the Board with respect to the issues at hand in this matter.

**2.** The United States Court of Appeals for the District of Columbia vacated the Board's ap-

proval of the Agreement, because of the Board's failure to hold a formal hearing, in *Northwest Airlines, Inc. v. C.A.B.*, 539 F.2d 748 (D.C.Cir. 1976). After conducting hearings the Board again approved the Agreement, subject once again to the LPPs, in Order 77–1–7 (November 16, 1976).

ation in Order 83–12–29 (December 28, 1983). Petitioners here, the "Banks group," composed largely of the same group of flight engineers as the Rankin group, seek reversal of the Board Order denying interest.

## II. Standard of Review.

In reviewing an order of the CAB, we must grant deference to the decision of the Board. Under 5 U.S.C. § 706, we cannot under the issue here presented set aside the Board's action unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law * * *." *See also Tiger International v. C.A.B.,* 554 F.2d 926, 935–37 (9th Cir.), *cert. denied,* 434 U.S. 975, 98 S.Ct. 532, 54 L.Ed.2d 467 (1977).

On consideration of the Board's denial of petitioners' claim to prejudgment interest, we find the Board's action neither arbitrary nor capricious. Whether an award of prejudgment interest was appropriate under the circumstances here was a legal question within the competency of the Board. The Board correctly noted that the LPPs on their face do not provide for an award of interest, and that no statute or judicial decision mandates such an award. Also, as the Board noted, it is not bound by the decisions of the NLRB awarding prejudgment interest in backpay cases. The NLRB's award of interest in backpay cases is intended to compensate employees injured by an employer's violation of federal labor relations law; LPP dismissal allowances, however, are intended to preserve the stability of the air transportation system. *See Wallace v. C.A.B.,* 755 F.2d 861, 864–65 (11th Cir.1985) (noting that the CAB is free to reject any aspect of the national labor policy for any rational reason; the CAB's major concern is the regulation of the airline industry, not the promotion of any specific labor policy). Further, the CAB itself developed the LPPs, and "has the best understanding of what those provisions are supposed to mean." *Id.* As the Board noted in denying petitioners' claim of interest, "If the Board had intended to impose as substantial a requirement as [the

payment of prejudgment interest], we would have expressly said so." Order 83–8–51 at 16.

We recognize petitioners' argument that Pan Am benefited from the use of the money that petitioners were entitled to under the LPPs for the seven years that the arbitration process lasted. The Board, however, gave full and fair consideration to all of petitioners' arguments in support of an award of interest, and reasonably concluded that such an award was not appropriate under the circumstances. Had the Board found that Pan Am had unreasonably delayed payment of the dismissal allowances, it would have been presented with a different situation. The Board specifically found, however, that Pan Am had not acted unreasonably, and that the claims were unliquidated because Pan Am could not have known how many and which flight engineers were entitled to allowances until the arbitrator determined those issues.

In sum, because the Board's conduct was neither arbitrary nor capricious, we affirm the Order denying prejudgment interest on the dismissal allowances.

AFFIRMED.